I'm the F of the Orange, Mr. Patrick Kelley. I'm the Event of the People, Mr. Paul Recep. Mr. Kelley. You may proceed. Good morning, may it please the court, counsel. My name is Patrick Kelley and I represent the appellant defendant, Ms. Conchetta Raphael, in this matter. The matter before you this morning is an eminent domain case where the Department of Transportation sought to take a 10-foot strip off Ms. Raphael's property immediately adjacent to Illinois Route 53 where it intersects with Interstate 355. The two issues before the court are two rulings that the trial court made related to motions in limine that both relate to the manner in which the two appraisers had issued the case value that partake in the 10-foot strip that totaled $870,000. So there's not a third issue? Well, I don't think so, Your Honor. Well, I thought I read in the briefs that you claimed that the court committed error when it refused to allow your expert to render a revised or an amended appraisal. We mentioned that. I think our appellant brief focused primarily on the first two issues. We did raise that. That was an issue on our post-trial motion, certainly. And the issue there was we had the amended appraisal that was consistent with the way the trial court judge thought the law is in value partake in properties. The appraiser signed an affidavit and explained that he thought that was an improper method. We think that's an improper method. But in order to try to have a resolution to the case, which is a relatively small dollar value case, we proposed to the court, why don't we just have this amended appraisal? And we also showed it to the court to show him that there's no difference in the ultimate amount of just compensation and that the issue the trial court discussed is really an issue about apportionment between the part taken and the damages to the remainder. And is this an MAI we're talking about? No, neither of the two appraisers in the case are MAIs, Judge. The appraisers are both certified general. The Chairman's goal for IADOT and Kevin Vaught for the property owner, neither are MAIs but both certified general. The valuation of Mr. Vaught, would you tell me what was in the numerator? What was in the numerator? Because the numerator is the value of the property according to the way I read it, divided by the total square feet of the property. That's right. And then taking that quotient and multiplying it by 871. That's right. So what was in the numerator? He valued the whole property at $475,000. When you say the whole property, are you talking about all the real estate or are you talking about the real estate plus structures, grass? It's the latter, Judge, and that's the way you have to value it. And that's the unit rule in these condemnation cases where you can't value. If there's a house on the property, which there is in this case, there's a single family home, a driveway, grass, it's landscaped, you can't value the underlying property and then determine how much the house is worth and add them together. That would be a violation of the unit rule. So both appraisers, Vaught and Metzgola, valued the whole property. And when I use the term whole property, I mean the underlying land with the house, with the landscaping, with the driveway. Vaught valued that at $475,000. Metzgola valued it at $420,000. And neither party objected to the methodology that the appraisers used to reach that value of the whole property. We think they're a little low on the number, but the methodology is acceptable on both sides. I think there's no disagreement on that. Both appraisers looked at other approved residential sales. Is there any case where the facts are the same or substantially the same, where the value in the numerator includes real estate and improvements? To value the whole property? Well, that's what you said. You said the numerator was the value of the whole property. Right. And the whole property is the land plus the improvements. Right. So is there any case that you're aware of that specifically allows, permits, or doesn't preclude using both land and improvements in the numerator? Well, I don't think there's any case, Judge, that addresses the issue one way or the other. I don't think there is a case. If you're looking for a case where it's specifically allowed, I don't think there is such a case. But there's also certainly no case that precludes that valuation method. Well, were any of the improvements located in the 871-square-foot area? Yes, they were, Judge. When I say improvements, I'm talking about structures. Well, there are no, and that's the distinction to make. There were no structures in the improvement in the part taken, but there were improvements. If there are structures included in the value in the numerator and there are no structures taken in the property in question, then are you not getting compensated more than what you are being damaged if, in fact, you are getting paid for having structures taken when, in fact, structures were not taken? I don't think so, Judge. The cases I tell you know are the Kerrigan case, the Second District case, out of the Second District, the Kerrigan case, and the Zabel case. They specifically tell you that the opposite result is mandated. And in those cases, there were absolutely no improvements on the part taken whatsoever. There's no driveway. There's no grass. It's totally bare land. And in Kerrigan, it's a large property, a large farm property, and the same with Zabel, a large farm property. There's houses, silos, barns, all things like that. They're part of the whole property, but they're located only on the remainder portion. The government was not taken. The government took, in both of those cases, bare land where there was no improvements whatsoever. And the courts in both of those cases barred the government's appraiser because they said the government's appraiser was required to consider the contributory value of the improvements in the remainder when he valued the part taken. Yes, but the contributory value of an improvement is not the improvement. Well, our position is just It's a little bit. Have you ever heard the story about the chicken and the pig that decided to open a restaurant? And the chicken said, I'll provide the eggs. And the pig said, well, what am I supposed to provide? And she said a ham and a bacon. And he said something to the effect, well, yours is a contribution. Mine is a commitment. And there's a definite distinction between the contribution of an improvement versus the contribution of your body, so to speak. Well, and what we have in this case is the appraisers are basically on opposite ends. Vaught gave full, uniform unit value, including the house on the remainder. Metzgola gave it zero. She flat out amended her deposition. I gave no value for the contributory value of the improvements on the remainder when I valued the part taken. She valued the property as vacant, did she not? Well, she valued the part taken as vacant. That's right. She valued the whole property. She valued, again, we think her number is low, but her methodology was okay. She included the house and came up to a value of $420,000. When she valued the part taken, which is the key issue here, she valued the part taken originally as if it was vacant. She looked at other vacant land sales in the area, totally ignored those approved residential sales, came up with a unit value of vacant land in the area, which I think was $12.50. And then she gave a small little increase only for the improvements that were within the part taken, which was grass, asphalt, and a little bit of driveway. And that is not only barred by Kerrigan and by Zabel. That's also totally contrary to the first bank shopper case. Were there other parcels in this taking or this project that were assessed or appraised in this way? You know, I don't know, Judge. There certainly were other properties all up and down 53 that had takings. This is the only owner we happen to represent on this particular project, so I really don't know the answer to that. Well, I mean, if – and I admit that I am new to condemnations. They come up rarely, so I have to re-equate myself all the time. But if you just look, she says it's $420, which you say is low. He says it's $475, which I assume you say is just right. Can we say that somebody is valuing the house at $55,000, which makes no sense? Because that house is worth more than $55,000, right? That's right. So that's – they're just coming up with that number by looking at comparables? Well, yeah, that's what they do. Appraisers in all condemnation cases look at comparable sales. There's three methods to value properties, the cost approach, the income approach, and the sales comparison. In condemnation cases, you must use the sales comparison approach. And if there is structure on the property, then you have to use comparables that have a structure that's similar to that property. That's right. And that's what both appraisers did to value the whole. And you also have to have – in your comparable, you have to have – is it true real estate that's roughly the same square footage and possibly the same configuration, meaning it's not a flag lot or it's not a rhombus or a trapezoid or a triangle or a circle as opposed to a rectangle or a square? That would be ideal. Both appraisers try to find comparable sales that are as close as possible to the subject property. And ultimately, one of the key issues in this case is ultimately those opinions that they give regarding the comparable sales and regarding their valuation numbers, those are expert opinions. And generally, those get presented to the jury, and the jury is the trier of fact, and they weigh the evidence. And in this case, there was no jury because since there was only one opinion, a directed verdict was made? That's exactly right. It was – that's exactly right. A directed verdict was entered at the government's appraised value. One of our – we think the government's appraiser should have been barred based on Kerrigan's case, the Schomburg case, the Zabel case, but at the very least, we think the two appraisers should have been able to testify. The jury could weigh the evidence. If they thought that Metzgola's method made more sense, they could have come in with a verdict at her number. If they thought Vought's appraisal made more sense, they would have come in at his number or anywhere between. The jury has to come in within the range of evidence. And the interesting thing is all of her comparables were higher than Vought's. That's right. Her lowest comparable sale for the whole property was at $420. Right. And that's where she wound up for her value of the whole. But yet she came – but she had to come up – she had to take the house off or the improvements off in order to come to $12.50 for partaking. That's absolutely correct. She would have had to in order to get to where she got. Well, she admits she does. I don't think there's any dispute that that's what she did. If she did it as vacant property, then I would assume – no, let's put it another way. Her comparables that she used were real property without a structure. No, they don't have. She had two different sets of comparable sales. First, she used three residentially improved sales to value the whole property. She came up with the $420 number. She basically threw that aside, said now I'm going to look at the partaking and figure out how much it's worth. I'm going to not consider those three sales. I'm going to look at five new comparable sales, and they're all vacant land sales. Well, she used it for the damage to the remainder, didn't she, the other $420 or whatever? Well, she came back to use the improved sales once you valued the remainder in the after condition. Because there's really three essential steps to come up with your ultimate opinion of just compensation. You value the whole property. Then you value the partaken. And everybody agrees you have to value the partaken as part of the whole property. That's mandated in every case. That's the unit rule. Well, it might be. There's some disagreement as to what the unit rule really means. In most cases, the unit rule means you can't value the land separately from the improvements. That's the Schomburg case where the appraiser comes up with a unit rule. Except that there are some cases where there are no improvements. That's right. They use the unit rule in those situations, and, therefore, that parameter of a structure or doesn't come into issue. And that's the Kelly case. That's the recent third district case of Kelly in our position. Well, isn't it Meacham, too, I think, that Kelly cites in the special deferment? It does, right. And they basically say Meacham and even Foreman and West Cokie Mill, all the cases the government has relied on to try to bar Vought and that the circuit court relied on were vacant land cases where one party attempted to bar the other side from value and any other method other than uniform unit value. And in all three of those cases, Meacham, West Cokie Mill, and Foreman, the court found, no, due to the special facts and issue in this case, we will allow both sides to present their opinions. And in all three of those cases, one of the parties testified on a uniform unit value basis, just like Vought did in this case, and the court said we'll allow the other case to present their opinion, which is that there should be different zones of use for whatever the reason. Different cases had different properties, different portions on each property that were worth different amounts. Well, to include the value of the structures in the numerator is not necessarily the same thing as to say that there's a difference between a thousand square feet of vacant property as opposed to a thousand square feet that has a house on it. I think that's right. Okay. Because if the property has a house on it, it may be more valuable because people can live on that property as opposed to having to either put a tent up or build a house. And with the zoning code and regulations and setback requirements that may or may not be in existence then when the first house was built as opposed to building one now, go to Florida and see how wonderful it is to try and build a new house now in an area where hurricane surge can affect the rules and regulations. And I think that's what Vought is essentially saying. He's saying there is a house on this property and you should consider it to have a house on the property. You shouldn't ignore the fact that there is a house there. And that house increases the value of the part taken and the part taken contributes to the portion worth of houses. If the house had no driveway, no front yard, no grass, its value would be significantly decreased. And the same if there's no house, the part taken would be worth far less. It might be Metzgola's value, but the fact is there is a house on it. And there could be something in between. That's a quote from Zabel and they cite to the Oberlander case. The quote is that the relative dependence or independence of the part taken to the entire tract may be proven. And that point is that both appraisers should be able to present their opinion to the jury. The jury can weigh the evidence and reach a ruling. Is the assessment of land for purposes of real estate taxation any similar or is there a correlation between it and eminent domain? There are certainly correlations. It's a little different because typically in tax cases you never have to value a strip of property like this. There would be no need to value a 10-foot wide strip. My point is that to my knowledge, and I think I can take judicial notice of the standard practices of real estate assessment, that real estate, especially residential property, the property in question is assessed both on the improvements. In other words, there's a box that sets forth what the improvement is. Is it square footage, whether it's built with brick, wood, or straw? And there's an assessed value for that. And then there's an assessed value for the land. Now, because it's whatever the assessed value of this land is, by its very nature it's improved land. And it may or may not be, depending on the totality of the circumstances, if there was a parcel next door that was vacant, the assessed value for the land with the house on it may be different than the vacant property assessment per square foot. Correct or not? Well, let me say the difference between that tax case and the condemnation world is that you cannot, you really cannot value properties in condemnation cases like the assessor does, where they have a value for the improvements and a value for the land. That's absolutely impermissible in condemnation cases. That's the unit rule. And you can't do that. And that's one reason I don't have the site off the top of my head. But there are cases. The unit rule basically says you have to treat it as a whole. As a whole property that contributes it together as an integral unit. And that's what Vaught did. He explained it in his appraisal, in his deposition, and in his affidavit. And there are cases that specifically say you cannot present evidence of assessed valuations in condemnation cases, and that's one of the reasons why you can't do that. I do have one other question that doesn't relate directly to this, but would relate to my consideration of the entire issue. At the time that the quick take took place in this case, was there an appraisal on either side, to your knowledge? Well, the IDOT had an appraisal. To proceed with a quick take, the condemning body must have an appraisal. We, I don't think, did have our appraisal completed at that point. We just reached a settlement, which is typical in a lot of these, especially small, relatively small, and mid-domain cases, the government will have an appraisal, because they typically file their motion for a quick take almost immediately after filing their initial complaint. So they would have to have a valuation. So they have to have a valuation. There's typically not time for us to prepare a valuation report before a quick take. And is it also typical, or is it generally the rule that at that point you'll, since that's the only real valuation you have, you'll come within some distance of that valuation and then go on? That's right. I think we got an increase. I don't remember the exact number, but $3,000 or $4,000 they gave us over and above IDOT's appraised value at that point in time. That school has done three different reports. At that point, it would have been, I think, their second report. They gave us a few thousand more than that just to settle the quick take so they could get the property, and then we proceeded with the case. So it doesn't mean anybody's married to this? No, absolutely not. It's nothing more than a placeholder, and then you proceed with the case discovery, expert disclosures. So they can do the development and you still have your rights? That's absolutely correct. Okay. Thank you. You said something in my last question that the difference is, and when you said the difference is, you meant there was a difference between the way eminent domain is valued or property is valued for purposes of eminent domain versus real estate assessment for taxation purposes. And earlier you said that the value of the part taken is supposed to be determined based upon what the value of the entire property inclusive of improvements are that might enhance that real estate. That is not the same thing as saying what you just told me, which is you have to value it as a whole. What you have to do is you have to value that increment taken with or in consideration of the fact that it is a part of an improved parcel, and then you also have to add therein the damage to the remainder. And when you take that total sum, that is when you supposedly have valued the whole, because it is that total sum that the alleged compensatory compensation without just or with just compensation, I don't want to call it damages because damages relates to the second aspect. And we haven't even gotten there. So the point is when you talked about the difference between the two, with real estate assessment, if the real estate is added to the improvements, the total is the whole that the assessment is for. And you might end up at the same number in that we're using that process. This is the process we use in condemnation cases. It's just a question of methodology, and that's just not the way it's done in condemnation. But we haven't gotten to damages yet. Let's put it another way. Experts could come up with two different valuations and attempt to rationalize it. Well, they could, but there are strict rules. And all we're saying is generally the expert opinion should be presented to the jury unless they're prohibited by case law. And what the case law tells you is that you must, and one thing I want to make clear, that I don't argue at the trial court level, and it's not our position, we are not arguing that both sides must value it the way Vought did. We're not saying you have to give a uniform unit value and assign every square foot the same. That's not a mandate we're trying to enforce. We're saying in Vought's opinion, he thought that was the proper way to proceed in this case. They could have proceeded in another way as long as they gave some contributory value from the improvements on the remainder. It didn't have to be as much as Vought said, but it can't be zero. Zabel tells you that, Kerrigan tells you that, Schomburg tells you that. It can't be zero. If it's somewhere in between, present it both to the jury and let the jury decide. What's the standard that we can do in this case? De novo. Both parties have agreed it's de novo. Why is it de novo? Why is it an exercise of discretion? Because from what you just told me, you said that you do not contest the argument about taking this whole thing in the manner in which Vought did. So you're claiming that it's now a question of law as opposed to whether or not the trial court abused its discretion? Well, the question of law is whether, as a matter of law, based on the cases, the appellate court and the Supreme Court cases, is it impermissible to value a part taken using uniform unit value? That's what IDOT's position is. They say, as a matter of law, you cannot do that. And that's how the trial court ruled. In the inverse, on the Metzgola question, we argue that's de novo as well because that's a legal question. She made an admission. There's no question of fact. Why we don't think it's an abuse of discretion is there's no questions of fact in this case. Both sides agree what Vought did. He used a uniform unit value. Both sides agree what Metzgola did. They have it in their brief. They said that's true. She didn't give any consideration to the contributory value. And the only question is a legal question. Does that mandate barring her appraisal under the cases? What do you think of Kelly's special concurrence then? Well, I think Kelly's special concurrence I think tells you that Vought's method is by far the preferable method to Metzgola's. And the result in Kelly in the special concurrence makes it very clear is that unless there are distinct zones of highest and best use, you should give a uniform unit value. And in this case, there are no zones, let alone distinct zones of highest and best use. There's only one highest and best use. It's a quarter acre residential property. When you use the term highest and best use, you're now talking about taking property that doesn't have a structure on it. Well, that's the Kelly case. That's right. I mean, that was an issue in Kelly. But my point is is that if the unit rule is concrete and narrowly defined, then how can you reconcile the concept that there are identifiable segments in a parcel of property that can be delineated and you can come up with a unit value based upon a clearly definable area? Because if you do, you now come up with several unit rules, have you not? As the special concurrence says, it's not really an enhancement or a clarification. It's an exception. And as an exception, it is essentially a different rule. Or the unit rule isn't as finite or concrete as you would suggest. Well, and we're not suggesting that. We're not suggesting that they're required to value a uniform. That's simply not what we're suggesting in this case. We're not saying they have to adopt Vaught's approach. We're just saying they've got to give some consideration of the contributory value. And the Kelly special concurrence in particular tells you the cases they rely on to try to bar Vaught. The only cases they rely on are Foreman, West Cokie Mill, H.P. Meacham. The Kelly special concurrence tells you all three of those cases are essentially exceptions to the general rule. The general rule, according to the Kelly special concurrence, is that you ought to give a uniform unit value to the property. And they say in those three cases, because of the special facts that were present in those cases, like in H.P. Meacham where the part taken is much more developable on a percentage basis than the remainder, that's encumbered with a great deal of wetlands, the property owner shouldn't be forced to have a uniform unit value that would devalue. And that's what I'm trying to do here. Can you then tell me the seminal case that established the unit rule? Well, one point of confusion, and I think actually Ida points it out in their brief, and I agree in part, is there's a little bit of distinction about what the unit rule is. The unit rule in most condemnation cases, when we are in front of trial courts, the unit rule is the Schomburg case, where you can't put a value on the land and then have a separate number and value the improvements, say $500. You can't say $12 per square foot of vacant land, and then the part taken here has got a few bushes and a little bit of driveway. I'll give you $500 for that bush, $1,000 for this bush, and $1,000 for the driveway. Add it all up, and that's your value for the part taken. That's what we typically consider the unit rule to mean. The Kelly case talks about the unit rule in a little bit of a different manner. And he adds in that special concurrence, it says, i.e., price per unit. I think it's price per unit value per acre, unit value per square foot. And that's a little different than what we typically consider it to be, but I think it wholly supports our theory much more than Ida's theory. Well, my point was, was the Seminole case that came up with the unit rule, was it only vacant or was there vacant with improvements? You know, I'm not sure, Judge, what the Seminole case is. I mean, it showed up and it showed up. Where the entire tract had improvements, but they weren't taking the improvements. They were only taking this case, this land is vacant, but it has been improved to the extent that it isn't just prairie or pasture or whatever, which, going back far enough into time, I think most land that was taken through eminent domain was for road purposes that were taken through farm property, which meant it was taken through acreage of farm property. Well, but it wasn't vacant land. Like, one of the Seminole cases is the Humiston case, which the trial court referred to in the post-trial motion hearing, and we were more confused about his reliance on that case than even the Foreman and Coquino cases. The Humiston case is an old Supreme Court case where they were taking a portion of a large acreage farm for road purposes, but there were improvements on the remainder. This is another case where there's a great deal of improvements on property. It's a 273-acre farm. They're only taking 3.8 acres out of the 273. Far removed from the taking, they have a house, a barn, silos, things like that, and the government's appraiser said, no, I'm valuing the part taken as bare land. Those improvements, it doesn't make any sense to give value for the house that's 200 acres away from this little strip here, and the Supreme Court said you can't do that. Maybe that makes sense to that appraiser, but they said as a matter of law, that is impermissible. You must give some contributory value. They're not saying it's got to be equal, and there's no magic percentage of how much you've got to assign, but you must attribute some contributory value for those buildings. Isn't that exactly, though, what Metzgola's appraisal says? In this valuation analysis, this appraiser has estimated the value of land as vacant and available for development as the highest and best use. Isn't that what she's done, exactly what the Supreme Court said you're not supposed to do? Well, yeah, that's right. She's done exactly what the Supreme Court said you cannot do, and that's what our position is in this case. Thank you. You'll have a chance to, or an opportunity, to come up. Thank you. Mr. Reset, is that how you pronounce it? Yes, thank you. Were you the trial attorney? No, I wasn't. Do you wish you were? Perhaps. We had a special that did the work in the trial court, and then typically we keep most of our appeals in-house, so I got to learn all about every domain law. Good afternoon. May it please the Court. My name is Paul Reset. I'm an assistant attorney general for the State of Illinois, and I represent the Illinois Department of Transportation in this appeal. As your honors have noted, there are vastly different methodologies that were offered by the appraiser for IDOT and the appraiser for Raphael on the second prong, the three-prong test. The first prong is what the value of the entire property is, and while I reach different numbers, that's not up on this appeal. That would be for the jury to decide, because it's subjective, it's not science, which appraisers feel whether the comparables supported which appraiser's view. And also with the third prong, which is about the damage of the remainder, it's the same thing. It's subjective, and that would also be for the jury. The dispute here is that both sides claim that the appraiser for the other side rendered an opinion on the second prong, which is an evaluation of the partial taking that is inconsistent with Illinois law, and on that basis they filed these motions, and then they tried to get the circuit court to bar that expert from testifying because what Illinois law is is not a question of fact for the jury to decide. The judge needs to instruct the jury about what Illinois law is. And that's why you've agreed we're on a de novo basis here? Correct. You're on a normal motion, and there would be an abuse of discretion standard, and obviously that would help us, but the correct standard would be de novo because you need to decide who's right as far as how does Illinois law instruct in eminent domain cases to value a partial taking of a bigger property. So what Mr. Vaught, the appraiser for Raphael, basically did was he reached a value for the entire property, including the house and the garage, which was at $475,000. He divided that by the total number of square feet of the property, which included both the lawn portion and the structural portion, came up with that $36 figure, and then just multiplied that by the 871 square feet. That's in this 10-foot strip of frontage that Ida took for the widening of the road. And our position is that that's not proper under Forman. It's not proper under Westcote, Mill, and other cases as well because those cases say that when you take a partial taking of a property, you're supposed to look at how that partial, that portion of the property contributes to the property as a whole because some parts of the property contribute more than others do. I mean, obviously, if we had taken the house and the garage and left the lawn, they wouldn't be arguing that every square foot is worth the same amount, and they would be saying, no, no, no, the part that the structure is built on is worth much more. So the problem with doing it the way that he did is it imports the value of the house and the garage into the strip of lawn that we're taking, even though we didn't touch the house or the lawn. She still has them to enjoy. She still meets the setback requirements, so there's no problems with the— Well, she's got four lanes of traffic about 10 feet closer to her house. That's true. She's not necessarily friendly. Right, that's true, and so that's taken into account two ways by our appraiser, Matt Scull. What she does is it was a three-step process she took on the second problem. The first thing is to look at, since we're taking vacant land, the part that we're taking did not have any structures on it, she looked at comparable vacant land sales for residential in the neighborhood to see what the going price was. How can you take comparable residential to see the vacant? I don't know how you can do that because it's not vacant. It is part of a zoned piece of property that is residential, and there are residential homes all along here according to what I've read in the facts and what I've looked at in the plaques. So they're all residential. We don't have—this land isn't—she can't put, in 10 feet of her property, she can't put up a hot dog stand on a foundation. She might be able to put one up that rolls, but not on a foundation. It's not a business property. Right. So that's why, I mean, no one could ever build there, so why would you give it the value of a piece of land that could be built upon? I mean, it's not worth the same as the part of the property that the house and the garage are on. But it's not vacant either. Well, she started with that. She starts with that actually for both appraisals. Most appraisers start with just as a benchmark the value of vacant land in the area as the first step. So even when she was valuing the entire property, including the house, when she reached the $420,000 mark, she looked at the vacant land first as a benchmark. Then she looked at improved properties with houses, comparable sales, and that's how she came up with that. And three comparables, right? Correct. And three comparables. Right, but that's not up on appeal, and that would have been for the jury to decide. Right. So then when she got to the second problem about how to value the partial taking, what she does is first she looks. We're not taking any part that has structure in it. We're just taking grass and asphalt. She looks at, as a starting point, what the sales figures are for other vacant lots in the area for residential land. So doing that as the first step only, she gets that benchmark of $12 per square foot or $12.50 per square foot. Then the next problem is she needs to adjust. As part of that, she adjusts for differences between Rafael's property and those other vacant lots. And in this particular case, Rafael is right by the Interstate 355 overpass, and plus she's on a busy state route in front of her house, so that makes the property a little less desirable than a property that would be on a quiet side street. Then the third part, and this is the part that they keep mischaracterizing, is she looks at that partial strip of land and whatever improvements are on it. And you can quibble about whether grass and asphalt is an improvement, but it's better than bare dirt. And she looks at to what extent does that strip of grass and asphalt contribute to the whole value of the property, which is at $420,000. And obviously the part with the house and the grass is more valuable than the part with just the grass. So then she adjusted upwards because it does make a house more valuable to have a bigger front lawn and to have a longer driveway. And then she reached a figure of $14 per square foot. So it wasn't just that she was taking the value of vacant lots and giving just that. She did increase the amount of the partial taking for the way that it contributed to the property as a whole. They're supposed to look at how parts interrelate and the totality of the circumstances. What if she didn't need setbacks anymore, even though it's a less desirable property because of its actual location, with 55 there in Roll, Ring, Row, that one. If you took her, now she wasn't in compliance with setback. It wouldn't hurt her with the county, but would that give her more, would that make it more valuable? Well, I mean, I think if she wasn't in compliance, I don't specialize in any domain, but I think if she was out of sowing, she might have problems. Well, she'd get grandfathered in. But I'm just talking about variables that might change the value of how Matagola did this. Well, it also depends on, you know, the Forman case talks about that not only is, even though vacant land is worth more if it's attached to a property with structures than just a patch of vacant land in isolation, that the vacant land would not be worth the same amount as the part with the structure on it, even though it would be worth a little more because you look at the interrelation. But also, Forman says that even two different parts of vacant land on the property might not be worth the same because obviously the lawn that's closer to the house is worth more because people are going to be more upset by having the road come right up to their porch than they are with losing 10 feet out on the perimeter. So that's why every case turns on the facts of the case, and the appraiser is supposed to look at how much does this really contribute to the entire value of the property, and how much is the buyer going to pay less because this is gone? Is the buyer really going to pay $65,000 less for this house as they're claiming because this strip of grass is gone right along the road, which the buyer might not even notice was ever there? Is the basic unit rule any different because of the location? Or the unit rule is the unit rule, right, whether it's located in the middle of a forest or on a busy highway? Well, as Mr. Kelly pointed out, it's a little confusing to use the term unit rule, and sometimes it's used interchangeably, but the unit rule actually means that you can't take the value of the land and then the cost of whatever it would be to put the structure on it and add them together and get the sum and say that that's the appraised value of the property. What they call the unit, we call it a homogenous unit value, is to say that every square foot is worth the same regardless of whether it's improved structure or not. And there is no case that says that that's the proper way to do things now, in a way. There have been cases where experts testify that it was, but for whatever reason it wasn't challenged. I don't know if it was strategy or it was just overlooked. But there are cases that say, all the cases that talk about it say that in that particular case it's wrong to use it. They say that not every part of the property is worth the same. If you look at West Copenhill, which is the 4th District, it says property owners are not entitled to insist that they get the same amount for every square foot regardless of what that square foot looks like and what it's used for. But Corky Mill was definitely three. There were three different ways, three different parcels on that property that could be used three different ways, one being more valuable than the next, right? Right. So this is very different from this case. I mean, that's the thing. This is really a case of first impression because, for whatever reason, there aren't published cases that talk about parcel takings in a residential circumstance. And I think it's probably because economically it's usually not worth appealing because the amount in dispute is so small. Or perhaps if there were appeals, they were Rule 23 orders, and so we just don't have anything. So there are things and principles you can take from those cases, although obviously if it's a big, complicated tract with different areas that are buildable and not have wetlands and some is commercial, some is industrial, that's apples and oranges from what we have. But the basic premise, which all these cases say that talk about this homogenous unit value, is that you need to look at the part taken and see what contributes to the whole thing. And obviously, like if you have a marshland, it's not worth as much as the buildable part because you can't build on it. So if I had to tax the marshland, we shouldn't have to pay the same amount that we would have to pay for, you know, just dividing the property with the math equation that Mr. Kelly favors. You said something about what Metzgola did, and that was she took the basis and then considered what the improvements were on the partial taking. And Mr. Kelly? For me, yeah, Mr. Kelly, with a Y and no E, because the Kelly case is an EY. Right. He said that the value of the property taken is supposed to be valued in conjunction with the entire partial, which you have not said Metzgola did. She only valued the improvements on the parcel. So tell me why she's doing this correctly if supposedly you first you agree with Mr. Kelly that it's supposed to be valued based upon the entire parcel's improvements thereon? No, and in fact, what he said, we think that he has the law wrong. He says that you have to look at both how the part taken contributes to the remainder and how the remainder contributes to the part taken, but that's just not what the law is. What the law is, you look at the part taken and you say, to what extent does that contribute to the whole property? Okay, so in some cases, like if this was an undeveloped piece of land, the part taken wouldn't really contribute anything to the rest of it because it's all fundable undeveloped land. But here you had a house and a garage on the other part of it, so it did make that more desirable to have, you know, a landscape strip with grass and asphalt where you can park your car or whatever. So you look at it. So it's not just like you put a grid down and every square foot is worth the same amount. You say, how much does this strip of grass contribute to the overall value? Like what percentage of that $420,000 does this contribute? And our position is, and we think that the case law supports it, is that it's not the same amount as the land that sits underneath the house and the garage. That's much more valuable. And what they're trying to do is import the value of the structures into the strip taken, even though they're keeping those, the use is not being negatively affected, and that it's just a way to, you know, triple the value of the taking and try to get more money. But would you also, well, what is your position on, all right, we've talked about Cokie Mills or West Cokie, whichever it's called in Springfield, and it's easier that way. It had three different uses that could have used. Does the house on this property create a similar line of delineation? See, that's the problem with these cases, why they're not squarely at a point. A lot of these cases happen to have large tracts of land that have different highest and best uses for different portions, and obviously we don't have that here. But I think that the same principle applies that you would look at, even if it's the same highest and best use, look at that strip that's being taken and what the values of the property and what it can be used for. Because say you had a residential lot, even that wasn't improved with a house. If the back third of it is all in March and you can't build on that, then that's not more of the same as the part that you can build on. And even though it's the same highest and best use of residential for the whole property. If you're correct, are you correct because Mr. Kelly's methodology gives a double recovery, first in determining the value based upon the entire parcel's improvements for the purposes of determining the value of the parcel taking, and then gives another contribution or payment based upon the damage to the remainder by determining that the value of the property taken will damage the value of the entire parcel? We do think that's a problem and it's something that we've argued in this case, that he's already building in the value of the house and the garage into the parcel taking and then saying I want damages for the loss of the house and the building which have already been imported. But whether the homogenous unit value applies or not, you don't even have to get to the third problem. That's an additional problem, but the reason that it's wrong is because it doesn't reflect reality and it doesn't reflect the law that this strip of property does contribute to the overall property, but not to the same extent as the part. When you buy a house, like you pointed out, you'd rather have a house with a small yard than a big yard and no house or a very small house because you're buying it to live in and to use. So to say that every square foot is worth the same, and again, if it were flipped, if we were condemning the house and leaving the law, you can be sure that they would want a higher value, saying of course it's worth a lot more because there's a house on it. So it's just kind of fact dependent and because here it gets a larger recovery. But you're making an assumption that when a person buys a house, they just look at the house, and that's not a valid assumption. There are lots of people who want to be secluded on lots of acreage. There are other people who buy houses with big front yards because they have children that they don't want running into the streets. And now the street is now 10 feet closer to her front door. And that was considered by Metzcola in the third prong, which is the damage to the remainder. Not only did she look in the second prong to the extent that the grass and the asphalt contribute to the overall value of the property, but in the third prong regarding the remainder, she said it makes the house less desirable to have a slightly smaller lawn, to have the road closer to you, and to have less driveway to park on. So that's how she came up with that additional $6,000 that she added to the value of the part taken. And then you get the total of $18,000, which, of course, is very close to the agreed amount for the there was the preliminary agreed amount of $20,000. Our appraiser ended up very close to that at $18,000. Theirs is way off at $65,000. But I asked Mr. Kelly, and I asked you just to be fair, does that $20,000 in any way bind you, bind Mr. Kelly, bind the court? It doesn't bind anyone. But if it was far off, don't you think that they would have objected? Well, if they didn't have a, if they didn't have an appraisal yet, and you did, well, they could have relied on it. They could have. Well, how soon did they know that you were going to take that property? Oh, it was several months before the quick take. I'm fairly certain. All right. Unless the Court has any further questions, we would ask that you affirm in the entirety. Thank you. Mr. Kelly. Your Honors, a few points on rebuttal. One I would like to start with is a comment that Mr. Reset just made, that the cases, I think he made an admission that the cases they're relying on are apples and oranges to the case that we have in front of us today. Their burden is to show that our appraised value and his expert opinion is improper as a matter of law. The only cases they recited to to try to make that proposition are the Forman case, the West Cokie Mill case, the H.P. Meacham case, and they're just not comparable to this case. In all of those cases, an appraiser did testify on a uniform unit value basis, and that wasn't even that issue. Nobody even challenged it in those cases. That's been an accepted methodology back 100 years through cases all the time. We have this method used all the time in combination cases. It wasn't even challenged, let alone was someone not barred in any of the cases for using that method. It wasn't even challenged. What was challenged was the side who was using the uniform unit value was trying to bar the opposite sides for not doing it. They were basically saying you must use that same methodology, and the court said no based on the facts with the three different zones in West Cokie Mill. They should be able to assign different unit values to the different zones. That's not what's at issue here. They keep trying to present the case as if we're saying you must absolutely, as a matter of law, use the uniform unit value, and that's not what we're arguing. We're arguing it should be permitted. How is Mr. Baugh's computation not the homogeneous rule? Well, it is. We admit that it is. It absolutely is. There's no question about it. So you're saying that the homogeneous rule and the unit rule are the same? Well, what I call the uniform rule. They're both authorized? Absolutely. They're both authorized. They're certainly not prohibited by any case. They're not even at issue in any appellate court case or any Supreme Court case. There is not a single case anyone can rely on and point to and say the holding in this case prohibits the homogeneous unit rule or the uniform unit value. We'll try to call it whatever you want to call it. There's not a single case. Not the enjoyment of life rule. That'd be damages. Well, so, in any case, that's the key point of what I think is. If you were to prevail with here, what do you specifically want? What we want is an exact opposite result of what happened in the trial court. What happened in the trial court was Baugh was barred, and the trial court entered judgment based on the government's number of 18,000. We think Metzgola's opinion of 18,000 should have been barred, and instead judgment should have been entered at Baugh's appraised value of 65,000. But, see, you've also argued several times that the jury ultimately should decide this. So if we do what you're asking us to do, that also means that we have to give the state an opportunity to get another appraisal, right? Well, no, that's an issue of discovery cutoffs. I think that's the third issue that you mentioned. But you want a jury. How can a jury only decide Baugh's opinion? Well, it's basically an alternative. This isn't the verdict with Paul Newman. It's basically an alternative request, Your Honor. What our primary request is is that judgment is entered at Baugh's number of 65,000 because with the request that this court find Metzgola's opinion to be impermissible as a matter of law. If the court were to find that both methods were permissible as a matter of law, then we request a jury trial and have the jury decide. And if we come up with a third one that we don't think Metzgola was correct the way she did it, it wasn't an application of this homogeneous value, unit value, as Mr. Risseca said, we give them a chance to produce one that is. That would not be consistent with anything you're looking for. Well, I mean, that would certainly be better than the current state of the case from my perspective. I mean, our top priority, our request, is that you enter judgment at Baugh's number. The alternative of giving them an opportunity to have a no appraisal, that would certainly be preferable to what the current state of the case is. And the reason, to go back to your last question at the end of my original argument about why Metzgola should be barred, in case law I'd like to read just one quick comment from the Zabel case. And that is, in Zabel, they barred the appraiser and the government tried to proffer to the jury. They said it was proper for the trial court to refuse the petitioner's offers of proof, which was the government's appraisals, since cross-examination established that the value of the land taken did not include the contributory value of the buildings that were on the remainder. And that goes to the question Mr. Risseca claims that we've misapplied the law. The question, I guess, is whether appraisers must give contributory value to the improvements solely within the part taken, when they value the part taken, or whether they also must give value to the improvements in the remainder. And we think it's both ways the cases may fit. Is that something that that appraiser could just say that they considered in coming to their value, or does it have to be a specific formulation? I don't think it needs to be a specific formulation. That's a question we've wondered ourselves. If Ms. Gola had said in her deposition when she was asked if she did give consideration to the contributory value improvements in the remainder, she answered flat out no. If she had said yes, and if she could show how she did that, I don't think it needs to be a specific mathematical equation or a formula. But if she said yes, I gave it consideration, and the improvement in the value of the part taken was increased based on that consideration, maybe she would not run afoul of the cases like Zabel and Kerrigan, and maybe her appraisal should be presented to the jury. But that's not what she said. But other than Humiston, is this – well, right now, as Mr. Rousset said, is this one of the – is this maybe the only case that talks about residential taking of this nature, taking on a parcel identified as non-residential? I don't think any of the cases that we've cited to the court or that's on the order that I got to cite to the court really are residential takings, like this case where it's a quarter-acre lot. You know, Humiston's a large property. Right. There's a residential whole lot. Right. But really, none of the – Where there was a house in there is what I'm talking about. Exactly right. But none of the cases that have been presented really focus on a quarter-acre or half-acre residential lot, and that's yet another reason we think it's improper to borrow a lot when there's not a single case that's on point. There's not a single case that bars an appraiser for the method, and none of the cases are factually similar to ours. It just seems entirely improper to bargain as a matter of law when there's no legal support to do so. And if you grant me, I could also talk about the double recovery issue. Otherwise, I would just ask the court to reverse the judgment of the trial court, and enter judgment and thoughts number or trial consistent with what we just mentioned. Okay. Thank you. We have another case on the call. The court will take a recess. Thank you, Your Honors. You're welcome.